IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

DANNY J. HICKS,

                Plaintiff

VS.

RALPH BATTLE, *et al.*,

                Defendants

NO. 5: 03-CV-307 (DF)

PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE

## RECOMMENDATION

Plaintiff DANNY HICKS has sued the defendants in the above-styled case under 42 U.S.C. §1983, alleging that they violated his Eighth Amendment right to be free of cruel and unusual punishment both by exercising deliberate indifference to his serious medical needs and by retaliating against his filing of grievances. The plaintiff also alleges that the defendants violated his Due Process rights by creating a co-payment for medical treatment. Tabs #1 and #2. Defendants RALPH BATTLE, JIMMY SIKES, ARTHUR R. GORDON, and JAMES TAYLOR[1] have filed a MOTION FOR SUMMARY JUDGMENT herein which is supported by numerous attached affidavits and exhibits (Tab #94); a brief (Tab #95); and a Statement of Undisputed Material Facts (Tab #96). After being advised of his right to do so (Tab #97), the plaintiff responded to the defendants' motion. Tab #106. Also in the record are the deposition of the plaintiff (Tab #100) and volumes of medical records (Tab #98).

### LEGAL STANDARDS

**Summary Judgment**

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

---

[1] The record herein shows that defendants LAURENCE HARRIS and JOANN SINCLAIR have never been served and are not before the court for consideration of any claims made against them. Therefore, as a part of this Recommendation, since this matter has been pending since 2003, IT IS RECOMMENDED that they and any allegations made against them be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure of the plaintiff to prosecute.

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. The Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[2]

---

[2] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

**Deliberate Indifference**

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, *rehearing denied* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1976). Over the last thirty years, the Eleventh Circuit has refined *Estelle*:

> Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. To show an objectively serious deprivation of medical care, an inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm, and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. In addition, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference, by demonstrating (1) awareness of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the drawing of this inference.
>
> Where an inmate receives adequate medical care, but desires different modes of treatment, the care provided does not amount to deliberate indifference. *Salas v. Tillman*, 162 Fed.Appx. 918, 921 (11th Cir. 2006) (internal citations and punctuation omitted).

"[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer,* 536 U.S. 730 (2002). A medical need is considered serious when a delay in treatment "results in an inmate's suffering a life-long handicap or permanent loss". *Id.* at 1188. *Hill* continues:

> An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further . . . the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. *Id.* at 1188-89. (Internal citations, punctuation, and emphasis omitted).

## DISCUSSION

## NON-SERIOUS CONDITIONS

In order to prove deliberate indifference, a plaintiff is required to establish that his medical needs are serious. As defined above, in order to be "serious," the condition must result in an inmate's suffering a life-long handicap or permanent loss or be comparable to the wanton infliction of pain. While plaintiff Hicks claims that the defendants acted with deliberate indifference to his needs for the following ailments, in his affidavit Dr. Burnside

gives assurance that each was treated in a medically acceptable manner: rhinitis and sinus headaches,[3] back pain,[4] neurodermatitis and erythematous rashes,[5] migraine headaches,[6] hemorrhoids,[7] a scalp condition,[8] an enlarged prostate,[9] and chronic fungus infection.[10] The plaintiff has not demonstrated that any of these conditions constitute a substantial risk of serious harm or qualify as a "serious" medical condition implicating Eighth Amendment protection. The defendants have provided medical evidence that the attending medical personnel did not unnecessarily or wantonly inflict pain upon the plaintiff. Accordingly, plaintiff Hicks has failed to meet the threshold requirement to establish that there has been deliberate indifference with respect to any of these conditions.

## SERIOUS CONDITIONS

### Asthma and Emphysema

Asthma and emphysema represent serious medical needs because if left untreated, they can result in death. However, the evidence in the record clearly demonstrates that adequate care has always been offered to plaintiff Hicks— including inhalers and breathing treatments. Furthermore, having been diagnosed with emphysema by 1993 and reprimanded for smoking on at least 19 occasions since 1997, plaintiff has continued to smoke, knowing that smoking is what caused the disease in the first place and that it represents the biggest impediment to controlling that illness. As Dr. Burnside makes clear in his affidavit, "[c]hronic health problems such as these cannot be cured, only managed, and management requires compliance with medical advice as well as adherence to the medication regimen prescribed. Hicks has failed to consistently comply with the medical care that has been prescribed to him." Burnside Aff. at ¶62. Even so, the plaintiff's lung capacity has been continually monitored (at least fourteen times since 2000), and he has been prescribed inhalers and other pulmonary medications with rare interruption for the entirety of his incarceration. Burnside Aff. at ¶8. Additionally, when plaintiff has complained about coughing and

---

[3] Burnside Aff. at ¶¶ 7, 34, 43

[4] *Id.* at ¶22

[5] *Id.* at ¶¶17-19.

[6] *Id.* at ¶34

[7] *Id.* at ¶58

[8] *Id.* at ¶18.

[9] *Id.* at ¶16.

[10] *Id.* at ¶¶18, 25, 30

wheezing, he has been seen and treated by the medical staff. Burnside Aff. at ¶¶24, 26-29. The plaintiff complains that when the prison floors are buffed his respiratory problems are irritated, but he fails to provide any evidence that buffing puts him in any serious risk of permanent harm. While the plaintiff's asthma or emphysema *may* represent a serious danger to his health, the plaintiff has provided no evidence that shows that the defendants are responsible for his contracting those diseases and the record is replete with evidence that the defendants have continually provided adequate treatment for them.

### Intestinal and Stomach Conditions

Having previously been diagnosed with duodenitis, an irritation of the small intestine, in November of 2000, plaintiff Hicks was diagnosed with Gastroesophegal Reflux Disease (GERD). He was prescribed acid reducers and stool softeners continually for the entire period covered by the medical record available to the court. Burnside Aff. at ¶20. The plaintiff complains of "intestinal pockets" and ulcers in his pleadings, but nothing in his medical record indicates tha he was ever diagnosed with either of those conditions. Since the plaintiff has failed to submit any verifying medical evidence into the record regarding the severity of these conditions (or even the existence of these conditions), there is no factual basis for a claim of any defendants' being deliberately indifferent to such conditions.

### Hepatitis B

Plaintiff Hicks claims that he was infected with Hepatitis B in 1977 and that non-treatment *may* have caused liver damage. However, the defendants have submitted medical records indicating that in 2000, the plaintiff stated that he had reported positive for Hepatitis A in 1976 but had never been tested for Hepatitis B. The results of tests taken in 2000 showed that he was positive for Hepatitis C (HCV) but non-reactive for both A and B. Burnside Aff. at ¶11. The defendants show that they have no record of the plaintiff's ever having tested positive for Hepatitis B, and the plaintiff has not produced any such evidence. Accordingly, the plaintiff's claims of deliberate indifference regarding Hepatitis B, for which he never claimed anything other than that his liver *may* have been damaged, are baseless.

### Hepatitis C

Without citing any medical evidence other than court opinions stating the Hepatitis C (HCV) is a serious medical condition, the plaintiff claims that the treatment he is receiving for his HCV is tantamount to cruel and unusual punishment.  However, Dr. Burnside in his affidavit states that since the plaintiff's liver enzyme level was normal **every time he was tested** (18 times since April 17, 2001), treatment for HCV is not appropriate; he opines that  the longer an HCV positive patient can wait to begin treatment, the greater his chances are to receive a better antiviral medication.  Burnside Aff. at ¶11.  The plaintiff's treatment has been in line with the GDC guidelines regarding HCV positive inmates. Burnside Aff. at ¶12. Course of treatment is "a classic example of a matter for medical judgment." *Estelle v. Gamble*, **supra.**

The plaintiff also claims that the medical staff's administering acetaminophen represents deliberate indifference because acetaminophen (the active ingredient in Tylenol)  can be dangerous for the liver when taken by someone with HCV.  Dr. Burnside makes clear in his affidavit that while acetaminophen can be dangerous to someone with HCV if taken in large doses or while using alcohol, since alcohol and large doses of Tylenol are not available to inmates, the use of Tylenol represents no threat to the plaintiff's liver. Burnside Aff. at ¶15.

Since antiviral medication for HCV is not appropriate at this time and the plaintiff is receiving appropriate care for his condition, his claims regarding deliberate indifference with respect to treatment of his HCV are without merit.

### DUE PROCESS CLAIMS

"As long as the conditions . . . of confinement [are] within the sentence imposed upon him and [are] not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Plaintiff Hicks contends that the imposition of co-payments for various services in the Georgia prison system (e.g. $5.00 co-payment for voluntary medical calls, $1.00 monthly bookkeeping fee; $4.00 fee for receiving a disciplinary report) violated his due process rights because the policy of collecting fees for services was imposed after his conviction.  The plaintiff does not challenge the fees themselves,[11] but rather he argues that the fees represent an *ex post facto* punishment.  That is, the plaintiff asserts that his being subject to a policy that was not in effect when he was sentenced effectively takes away a property right from him without due process of law, as required by the Constitution.

---

[11]Similar fees have been found constitutional. *See e.g. Reynolds v. Wagner,* 128 F 3d 166, 172-82 (3rd Cir. 1997).

In *Weaver v. Graham,* 450 U.S. 24 (1981) the Supreme Court held that "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law which . . . imposes additional punishment to that then prescribed." *Id.* at 28. If you consider prison policy as a law and a co-payment as an additional punishment, that statement could be used to bolster the plaintiff's case, but the next sentence in *Weaver* thwarts that argument: "Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Id.* at 28-29.

It is not a convincing argument that a prisoner would not have committed a crime if he had known that years into his incarceration prisons would institute a co-payment policy for inmate-initiated sick calls and other services. In particular, since the co-payments were not made retroactive to a time before the plaintiff knew that voluntary sick calls would require such payments, plaintiff HICKS was always aware of the effects of his actions. In addition, insofar as medical treatment is concerned, he does not allege that any needed treatment was withheld. Since such fees are generally constitutional, and in the plaintiff's case were not applied retroactively, his due process claim is without merit.

## RETALIATION

"The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech, particularly the right to petition the government for redress of grievances by filing complaints or lawsuits regarding prison conditions." *Sepulveda v. Burnside*, 170 Fed. Appx. 119, 123 (11th Cir. 2006) (internal punctuation and citations omitted). "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir.1989) (per curiam). "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." *Sepulveda*, 170 Fed. Appx. at 123.

Plaintiff HICKS alleges that as the result of his filing grievances (the first coming in May 2003), (1) the defendants raised his security level in July of 2003; (2) his counselors filed negative reports about him; (3) he has received punishment disproportionate to what other inmates received for similar violations of prison regulations; and (4) he was denied parole in 2004.[12]

At Bostic State Prison there is an annual review of prisoners' security classification. Def. Exhibit C at 129. Plaintiff Hicks' 2003 review came on July 27, 2003; his previous classification had occurred a year earlier on July 11, 2002, at which time the plaintiff was found to be a minimum security risk. *Id.* Plaintiff claims that he had a "thirteen year clean history" (Pl. Response, Tab #106 at ¶8) before his security level was raised from minimum to medium in 2003. The defendants' exhibits show that the plaintiff's "score on the security reclassification form indicated he should remain at minimum," (Def. Exhibit C at 129) but they assert that the plaintiff's security level was "raised from minimum to medium based on the nature of his offenses . . . his sentences (life plus 20 years concurrent), a previous escape attempt from Georgia State Prison on 06/02/78 and the security mission of Bostic S.P. and physical security limitations, i.e., no perimeter detection system." *Id*. HICKS was convicted of murder, three counts of armed robbery and two counts of aggravated assault in 1976.

In the view of the undersigned, a jury could find retaliation for plaintiff's filing a grievance in that his security reclassification came **after a thirteen year clean history**, disregarded the score on a security reclassification form, and came very close in time to the filing of his grievance. It is undisputed that plaintiff's reclassification came thirty years after he was convicted of violent crimes and twenty-eight years after he attempted an escape could have been.

- 8 -

---

[12]Plaintiff Hicks vaguely alleges in pleadings filed subsequent to his complaint that he was denied parole as a result of the defendant's retaliation. This allegation does not appear to be included in the plaintiff's original complaint, however.

While the defendants argue that "it is far more likely that any negative reports from the plaintiff's counselors are based on misconduct" than that they come as a result of his filing of grievances (Def. Motion for Summary Judgment, Tab #94 at 20), based on the information submitted thus far — particularly with respect to the change in plaintiff's security level — it is possible that a jury could also find that there was a connection between the plaintiff's filing of grievances and an increase in negative reports. The same can be said for the plaintiff's allegations that he has received harsher punishment than his peers for comparable rules violations and for the denial of the plaintiff's parole. Such are questions of fact which must be decided by a jury.

## QUALIFIED IMMUNITY

The defendants assert qualified immunity as a defense to all claims against them. A public official performing a discretionary function enjoys qualified immunity in a civil action for damages, provided his or her conduct does not violate clearly established federal statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir.2002), the Court stated:

> Qualified immunity protects government officials, in their individual capacities, from suit unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances. . . . "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Lassiter v. Alabama A&M Univ.*, 28 F.3d 1146, 1149. *See also Bozeman v. Orum*, 422 F.3d 1265 (11th Cir.2005).

In light of the finding that there was no constitutional violation with respect to plaintiff Hicks' medical treatment or due process rights, it is unnecessary to address qualified immunity for those issues. Since it is clear that an official's retaliating against an inmate for his exercising his right to free speech is a constitutional violation, the defense of qualified immunity does not lie.

## CONCLUSION

In light of the foregoing, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT (Tab #94) be GRANTED as to all defendants with respect to the plaintiff's claims of both deliberate indifference to his medical needs and a violation of his due process rights.  However, since there are issues of fact to be determined with respect to the plaintiff's claims of retaliation, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT be DENIED to the extent it deals with retaliation.  Pursuant to 28 U.S.C. §636(b)(1), the parties may file written objections to this RECOMMENDATION with the Clerk of court directed to the district judge assigned to this case, **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO RECOMMENDED, this 28th day of AUGUST, 2006.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE